## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

PARRISH CHASE,

            Plaintiff,

    vs.                                CA 12-112-ML

ASHBEL T. WALL, II, and
RICHARD A. LICHT,

            Defendants.


### MEMORANDUM AND ORDER

Before the Court is Plaintiff's Application to Proceed without Prepayment of Fees and

Affidavit (Doc. #2) ("Application") filed in conjunction with his civil rights Complaint (Doc. #1)

pursuant to 42 U.S.C. § 1983.  Although Plaintiff has provided the proper documentation as directed

by 28 U.S.C. § 1915(a)[1] with regard to his Application, the Court is required to screen the Complaint

---

[1] Section 1915(a) states in relevant part:

(a)(1)  Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.  Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
(2)  A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.
....

28 U.S.C. § 1915(a).  Further, subsection (b) provides in relevant part:

(b)(1)  Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.  The court shall assess, and when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of--
    (A)  the average monthly deposits to the prisoner's account; or
    (B)  the average monthly balance in the prisoner's account for the 6-month period

(Doc. #1) by 28 U.S.C. §§ 1915(e)(2) and 1915A.

In connection with proceedings *in forma pauperis*, 28 U.S.C. § 1915(e)(2) instructs a court to dismiss a case, or portion thereof, at any time if the court determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Pursuant to 28 U.S.C. § 1915A, the Court is required to screen complaints filed by prisoners against a governmental entity, officer, or employee of such entity and dismiss the complaint, or any portion thereof, for reasons identical to those set forth in § 1915(e)(2).  See 28 U.S.C. § 1915A.

In the instant Complaint (Doc. #1), Plaintiff names as Defendants Ashbel T. Wall, II, Director of the R.I. Department of Corrections ("DOC"), and Richard A. Licht, Director of the R.I. Department of Administration (collectively "Defendants").  See Complaint ¶¶ 4-5.  In brief, Plaintiff alleges that in 2002, Director Wall created a policy, 2.17-3 (the "Policy"),[2] which appropriates the investment earnings from Plaintiff's funds held in trust to reimburse the DOC for the operational costs of the Inmate Accounts Office and reimburse the state for negative balances accrued by other prisoners.  See id. ¶¶ 10-13.  Any earnings which exceed the operational costs and

---

immediately preceding the filing of the complaint or notice of appeal.
(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.
....

Id. § 1915(b).

[2] Prior to 2002, the funds in individual inmate accounts were pooled and invested, and any return on the investment was allocated to individual inmate accounts based on average daily balances.  Young v. Wall, 642 F.3d 49, 51 (1st Cir. 2011).  The facts relating to the creation of the Policy are recounted in Young, see id. at 52, and need not be repeated here.

2

negative balance reimbursements revert to the state's general fund as general revenues. See id. ¶ 14. According to Plaintiff, he has not received any interest payments from investments made on his principal account since 2002. See id. ¶¶ 9, 18.

Counts 1-6 contain allegations against Director Wall, and Count 7 asserts claims against Director Licht. Count 1 alleges that Director Wall's policy which deprives Plaintiff of his share of the interest earned on inmate accounts is *ultra vires*, contravenes R.I. Gen. Laws § 35-4-24(b), and violates his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. See Complaint ¶¶ 20-22. Count 2 alleges that Director Wall's appropriation of Plaintiff's share of the interest to reimburse the DOC for the operational costs of the Inmate Accounts Office, without first promulgating the required fee schedule pursuant to the Administrative Procedures Act ("APA"), constitutes illegal reimbursement, contravenes R.I. Gen. Laws § 42-56-38, and deprives him of his property and his right as an "interested person" to voice his objections during the rule-making process in violation of the First and Fourteenth Amendments. See id. ¶¶ 24-25; see also id. ¶ 12. Count 3 alleges that Director Wall's policy and practice of appropriating Plaintiff's share of the interest to pay for other prisoners' negative balances and their greater share of operational costs constitutes an unequal cost burden, deprives him of his rightful share of the interest, and violates his rights to equal protection and due process under the Fifth and Fourteenth Amendments. See id. ¶¶ 27-29. Count 4 alleges that Director Wall's policy and practice of returning Plaintiff's interest share to the state's general fund when the commingled interest shares exceed the overall operational costs of the Inmate Accounts Office contravenes R.I. Gen. Laws § 35-4-24(b), deprives Plaintiff of his share of the interest, is *ultra vires*, constitutes a taking, and violates his rights under the Fifth and Fourteenth Amendments. See id. ¶¶ 31-32. Count 5 alleges that Director Wall does not spend the

appropriated interest earnings for the purposes listed in the Policy, constituting a misappropriation of state funds, deprivation of Plaintiff's property, gross negligence, and abuse of power. See id. ¶¶ 34-37.  Count 6 alleges that Director Wall knew or should have known about Rhode Island's budgetary appropriations and public records laws, inadequately provided public records, and disregarded budgetary laws, constituting gross negligence and abuse of power and depriving Plaintiff of his rights described in Counts 1-5.[3]  See id. ¶¶ 39-41.  Finally, Count 7 alleges that Director Licht knew or should have known about Rhode Island's budgetary laws and how each agency with custodial trust accounts allocates the interest earnings to the trust accounts, but deliberately failed to create policy or issue directives to Director Wall to apply R.I. Gen. Laws § 35-4-24(b) fairly and equally, constituting gross negligence and abuse of power and depriving Plaintiff of his share of the earned interest in violation of his rights to due process and equal protection under the Fifth and Fourteenth Amendments. See id. ¶¶ 43-47.  Plaintiff seeks declaratory and injunctive relief as well as nominal, compensatory, and punitive damages. See id. at 14-16.

Having reviewed the Complaint,[4] the Court rules as follows:

---

[3] Plaintiff does not specify which rights.  Complaint ¶ 41.

[4] The standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2) and 1915A is identical to that used when ruling on a Rule 12(b)(6) motion.  See Fridman v. City of New York, 195 F.Supp.2d 534, 538 (S.D.N.Y. 2002); see also Pelumi v. Landry, CA 08-107, 2008 WL 2660968, at *2 (D.R.I. June 30, 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 566 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also Fed. R. Civ. P. 12(b)(6).  In making this determination, the Court must accept Plaintiff's well-pled allegations as true and construe them in the light most favorable to him. See Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999); Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998).  Although the Court must review pleadings of a pro se plaintiff liberally, Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court need not credit naked assertions or unverifiable conclusions, Iqbal, 566 U.S. at 678-79.

In order to maintain a § 1983 action, Plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief.  Id. at 678.  Section 1983 requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action.  Sanchez v. Pereira-

Regarding Plaintiff's federal claims, the majority of the issues raised by Plaintiff have been litigated and decided by the Court of Appeals for the First Circuit. See Young v. Wall, 642 F.3d 49 (1st Cir. 2011). Plaintiff alleges that, under the Policy, Director Wall's appropriation of his share of the commingled interest for any purpose, to reimburse the DOC for the operational costs of the Inmate Accounts Office, and to pay for other inmates' negative balances deprives him of property in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution, and, with regard to the latter claim, also deprives him of his right to equal protection and due process under the Fifth and Fourteenth Amendments. Plaintiff additionally claims that the policy of returning Plaintiff's interest share to the state's general fund as general revenues when the commingled interest shares exceed the operational costs of the Inmate Accounts Office constitutes a taking and deprives him of property in violation of his Fifth and Fourteenth Amendment rights. Plaintiff asserts that he was deprived of his right under the First and Fourteenth Amendments to voice his objections to the Policy during the rule-making process. Plaintiff lastly alleges that, in contrast to the DOC, other departments under Director Licht's supervision allocate earned interest to the state wards' accounts in accordance with R.I. Gen. Laws § 35-4-24(b).

In Young, the First Circuit held that an inmate does not have a property right in the accrual of interest on his or her account. See 642 F.3d at 53-54; see also id. at 51 (concluding that "prison inmates lack a constitutionally protected property right in interest not yet paid"); id. at 55 (holding that the DOC's "forward-looking change in policy and practice did not deprive the plaintiff of any constitutionally protected property right"). Thus, Plaintiff's claims in Counts 1-4 that he was deprived of property in violation of his rights under the Fifth and Fourteenth Amendments fail

Castillo, 590 F.3d 31, 41 (1st Cir. 2009); see also 42 U.S.C. § 1983.

because he has no property right in the interest.  Those claims are, therefore, dismissed.

As for Plaintiff's contention in Count 3 that the Policy deprives him of his right to equal protection and due process under the Fourteenth Amendment,  Young forecloses these claims as well: "When RIDOC halted this practice [of allocating earned interest to inmates' accounts], it did so prospectively and uniformly.  Hence, the plaintiff was treated the same as every other similarly situated inmate.  He was not singled out and excluded from the operation of a general policy or practice that continued in force."  Id. at 55.  Thus, Plaintiff's equal protection argument is rejected. Moreover, because Plaintiff has no property interest in interest not yet accrued, it follows that he has not been deprived of any due process rights.  See id. at 52 (rejecting argument that the DOC's "decision to stop paying interest on inmate accounts amounted to both an unconstitutional taking and a due process violation"); see also id. at 51 (noting that because inmates lack a constitutionally protected property interest in interest not yet paid, "the [DOC] was at liberty to abrogate the policy prospectively").  Therefore, Plaintiff's equal protection and due process claims against Director Wall are dismissed as well.

The same is true for Plaintiff's takings claim (Count 4).  See id. at 52-53 (rejecting argument that denial of interest constituted an unconstitutional taking of the plaintiff's property). Accordingly, that claim is also dismissed.

In addition, Plaintiff's claim that he was deprived of his right to voice his objection(s) to the Policy (Count 2), thereby violating his rights under the First and Fourteenth Amendments, fails.  In Minnesota v. State Board for Community Colleges v. Knight, 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299, the U.S. Supreme Court stated that "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy.  See id. at 283;

see also id. at 285 ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public interest."). Even as a member of the specifically affected class, Plaintiff has no right to be heard on decisions of policy. See id. at 287 ("When government makes general policy, it is under no greater constitutional obligation to listen to any specially affected class than it is to listen to the public at large."). Nor does Plaintiff have a right to be heard pursuant to the Fourteenth Amendment. Young, 642 F.3d at 52 (rejecting argument that the DOC's "failure to afford the plaintiff notice and an opportunity to be heard before abandoning the practice of accruing interest violated his right to procedural due process"); id. at 55 ("[T]he Due Process Clause requires notice and an opportunity to be heard when a state seeks to deprive a person of a property interest. But where, as here, there is no property interest, that procedural prophylaxis is not required.")(internal citations omitted); see also Minnesota State Bd. for Cmty. Colls., 465 U.S. at 285 (noting that the Supreme Court had previously rejected due process as a source of an obligation to listen). Accordingly, the Court finds that Plaintiff had no right to be heard regarding the Policy based on either the First or Fourteenth Amendment.[5] That portion of Plaintiff's Count 2 claim is also dismissed.

In Count 7, Plaintiff alleges that "[u]pon information and belief, Directors of the other state agencies with custodial accounts allocate the interest earnings to the trust accounts of the wards in their care in accordance with R.I.G.L. [§ ] 35-4-24(b)." Complaint ¶ 44. According to Plaintiff, Director Licht's failure to ensure that directors of all departments, including the DOC, fairly and

---

[5] The Court notes parenthetically that Plaintiff did voice his objections to the Policy in letters to Gina Caruolo, Rules Coordinator at the DOC Policy Unit, dated May 17, 2011, see Complaint, Ex. C (Letter from Plaintiff to Caruolo of 5/17/11); see also id. (Letter from Coyne-Fague to Plaintiff of 5/23/11), and to Director Licht dated September 30, 2011, see id., Ex. D (Letter from Plaintiff to Licht of 9/30/11).

equally apply § 35-4-24(b) deprives Plaintiff of his share of the earned interest in violation of his due process and equal protection rights under the Fifth and Fourteenth Amendments.  Such claim fails.

The due process component of Plaintiff's claim is dismissed based on the <u>Young</u> decision. <u>See</u> 642 F.3d at 55.  As noted, Plaintiff has no property right to interest not yet paid. <u>Id.</u> at 51.

Plaintiff's equal protection argument fares no better.  Plaintiff's allegation that "[u]pon information and belief," Complaint ¶ 44, other agencies return accrued interest to the custodial accounts of wards in their care does not comport with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, 566 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  In <u>Iqbal</u>, the Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. at 678  (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); <u>see also id.</u> (noting that a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'")(alteration in original)(quoting <u>Twombly</u>, 550 U.S. at 557).  Here, Plaintiff has offered nothing but a naked assertion that other departments allocate interest to their wards' accounts without any supporting facts.

Even if Count 7 met <u>Iqbal's</u> "facial plausibility" standard, 556 U.S. at 678, the statute upon which Plaintiff relies, R.I. Gen. Laws § 35-4-24(b), clearly grants each agency the right to determine the allocation of interest earned from the custodial accounts.  <u>See</u> R.I. Gen. Laws § 35-4-24(b).[6]

_____

[6] Section 35-4-24(b) states that:

All funds received from patients, wards, inmates, or residents on a custodial or trust basis shall be turned over to the general treasurer and shall be placed in a custodial account within the general fund.  The general treasurer will provide the agency with an estimate of earnings on these funds while held in the general fund, and the state controller shall transfer these

Thus, Plaintiff's statutory argument is unavailing.

Lastly, Plaintiff is not similarly situated to wards of other state agencies.  As the <u>Young</u> court observed: "Although criminals do not forfeit all of their constitutional rights upon conviction and incarceration, they traditionally enjoy a more modest constellation of rights than other persons.  This distinction has particular force when it comes to property rights."  642 F.3d at 53 (internal citations omitted).  For these reasons, Plaintiff's equal protection claim is dismissed.

Plaintiff also raises a number of state law claims.  However, having dismissed all of Plaintiff's federal claims, the Court in its discretion declines to exercise jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  <u>See</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)("That power need not be exercised in every case in which it is found to exist.  It has consistently been held that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."); <u>see also</u> <u>id.</u> ("Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); <u>DM Research, Inc. v. Coll. of Am. Pathologists</u>, 2 F.Supp.2d 226, 230 (D.R.I. 1998) ("Having determined that the sole federal claim should be dismissed, the Court has discretion to determine whether it should exercise supplemental jurisdiction over those [state law] claims.").

Based on the foregoing analysis, Plaintiff's Complaint is DISMISSED.  His federal claims are dismissed with prejudice.  His state law claims are dismissed without prejudice to being raised

---

earnings to the trust account.  **It will be the responsibility of the agency to determine the allocation of these earnings.**  The state controller, upon receipt by him or her of properly authenticated vouchers, is authorized to draw from time to time his or her orders upon the general treasurer for payment from these custodial accounts and the general treasurer is authorized and directed to make payments from these accounts upon receipt of the orders.

R.I. Gen. Laws § 35-4-24(b)(emphasis added).

in the state courts.  Plaintiff's Application to proceed in forma pauperis is DENIED as moot.


SO  ORDERED:


/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge

DATE: October 2, 2012